CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

NOV 2 9 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JAMES D. HABURN and )
STEFANIE A. RODEN, )
                                            )
       Plaintiffs,                 )      Civil Action No. 7:07CV00240
                                            )
v.                                         )      **MEMORANDUM OPINION**
                                            )
PETROLEUM MARKETERS, INC., et al., )      By: Hon. Glen E. Conrad
                                            )      United States District Judge
       Defendants.                 )

James D. Haburn and Stefanie A. Roden, proceeding pro se, filed this civil action against Petroleum Marketers, Inc. ("PMI"); "John and Jane Doe Owners and Co-Owners"; Ronald Hare, President and Chief Executive Officer of PMI; Kimberly Owens, PMI's Director of Human Resources; Penny Prillaman, Manager of Stop In #205; and Bill Barnett, Assistant Manager of Stop In #205. The case is presently before the court on the motion to dismiss filed by PMI, Hare, and Owens, and the motion for partial summary judgment filed by the plaintiffs. For the following reasons, the motion filed by PMI, Hare, and Owens will be granted in part and denied in part, and the plaintiffs' motion will be denied. The court will also dismiss the plaintiffs' claims against Prillaman, Barnett, and the John and Jane Doe defendants, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## Background

The plaintiffs previously worked in the deli at Stop In #205, a convenience store in Cloverdale, Virginia that is owned by PMI. Roden worked at the convenience store from September of 2004 until her resignation in May of 2005. Haburn worked at the convenience store from February of 2005 until his resignation in April of 2005. During that time, the

plaintiffs also owned a seasonal business selling coupon books, through which they allegedly had a successful business relationship with PMI.

The plaintiffs allege that in February of 2005, Roden complained to Penny Prillaman that Bill Barnett was violating Roden "in a manner that she felt was sexual harassment." (Compl. at 3.) Barnett's conduct included inappropriate touching and sexual comments. The plaintiffs allege that despite Roden's complaints to Barnett and Prillaman, the conduct persisted. The plaintiffs further allege that as time passed, "other store employees, at Defendants Barnett and Prillaman's encouragement, started to abuse and violate Plaintiff Roden." (Compl. at 5.) Such abuse included "hitting, pushing, and cursing." (Compl. at 6.) The plaintiffs allege that Roden's complaints regarding the misconduct were ignored by the store's managers.

The plaintiffs also allege that Roden injured her back as a result of having to carry trash bags from the convenience store to a dumpster, and that Barnett would not permit anyone to help her. The plaintiffs allege that Roden advised Prillaman of her work-related injuries, and that Prillaman "did not report or cause Plaintiff Roden to receive medical attention." (Compl. at 8.) Instead, Prillaman "just told her to keep working." (Compl. at 8.)

The plaintiffs allege that Haburn, "having witnessed the violations against Plaintiff Roden, was the first to depart Stop In #205, losing his income which he could not afford to lose." (Compl. at 10.) Thereafter, Roden resigned, "reasoning that the environment had become so progressively and cumulatively intolerable that her only fitting response and solution was to resign." (Compl. at 10.) Consequently, the plaintiffs allege that they both suffered a loss of income, in addition to damage to their seasonal business. The plaintiffs further allege that Roden pursued a grievance with Kimberly Owens and Ronald Hare after she resigned, that Owens and

Hare did not "cure or correct" the problem, and that they "made the matter worse by covering the matter up." (Compl. at 10.)

The plaintiffs filed this action on May 10, 2007. The complaint sets forth 37 claims, each of which appears to fall into at least one of the following categories: (1) federal constitutional claims, brought in reliance upon the First, Fifth, and Fourteenth Amendments to the United States Constitution; (2) federal statutory claims, filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.;[1] and (3) claims under state statutory and common law. On July 17, 2007, PMI, Ronald Hare, and Kimberly Owens filed a motion to dismiss. That same day, the court issued a Roseboro[2] notice directing the plaintiffs to file a response within twenty days, and advising the parties that if documents outside the pleadings were submitted by either side, the motion to dismiss might be considered as a motion for summary judgment. On August 6, 2007, the plaintiffs filed a response to the motion to dismiss and a motion for partial summary judgment, to which PMI, Hare, and Owens filed a reply on August 23, 2007. On August 21, 2007, the court advised the plaintiffs that service had not been executed on Penny Prillaman, Bill Barnett, or the John and Jane Doe defendants, and that the plaintiffs had until September 7, 2007 to notify the Clerk that service had been accomplished on these defendants. On September 7, 2007, the plaintiffs filed a motion for extension of time to accomplish service. Despite receiving the requested extension, the plaintiffs have not accomplished service on Prillaman, Barnett, or the John and Jane Doe defendants.

---

[1] Although the plaintiffs do not cite Title VII in their complaint, it is clear from the plaintiffs' subsequent exhibits and written submissions that certain claims are filed pursuant to Title VII.

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

3

## Discussion

I.  Plaintiffs' Claims Against Prillaman, Barnett, and the John and Jane Doe Defendants

As previously stated, by order entered October 12, 2007, the court granted the plaintiffs' motion for extension of time to accomplish service on Prillaman, Barnett, and the unidentified John and Jane Doe defendants. The plaintiffs were given until November 1, 2007 to notify the Clerk that service had been accomplished, and the plaintiffs were advised that failure to comply with the order would result in the dismissal of the named defendants. Despite receiving the requested extension, the plaintiffs have failed to accomplish service on Prillaman, Barnett, or the John and Jane Doe defendants. Accordingly, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the plaintiffs' complaint will be dismissed as to these defendants. See Fed. R. Civ. P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time. . . .").

II.  Motion to Dismiss Filed by PMI, Hare, and Owens

PMI, Hare, and Owens have filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, the defendants argue that the plaintiffs' federal constitutional claims should be dismissed for failure to state a claim upon which relief may be granted; that the plaintiffs' Title VII claims should be dismissed because a timely charge of discrimination was not filed with the Equal Employment Opportunity

4

Commission ("EEOC"); and that the court should decline to exercise supplemental jurisdiction over the plaintiffs' claims under state law.

A. Constitutional Claims Against PMI, Hare, and Owens

The plaintiffs' complaint includes several claims in which the plaintiffs argue that their constitutional rights were violated by PMI, Hare, Owens and/or the defendants in general. For instance, in claims 27 and 28, the plaintiffs allege that Hare and Owens violated and conspired to violate the First Amendment by failing to take proper action with respect to Roden's grievance. In claims 33 and 34, the plaintiffs allege that the defendants deprived and conspired to deprive the plaintiffs of "a secured, protected interest/right in their employment at Stop In #205." (Compl. at 19.) In claim 35, the plaintiffs allege that Hare, Owens, and other defendants "conspired to obstruct the Plaintiffs' First Amendment, Fifth Amendment, and Fourteenth Amendment rights to timely and effective administrative proceedings and to petition and access the courts, by deliberately delaying Plaintiffs' complaint efforts." (Compl. at 20.) Likewise, in claim 36, the plaintiffs allege that Hare and Owens "obstructed Plaintiffs' rights pursuant to the First, Fifth, and Fourteenth Amendments to the U.S. Constitution to petition and access the courts to seek redress as to these matters." (Compl. at 20.)

PMI, Hare, and Owens have moved to dismiss the plaintiffs' constitutional claims for failure to state a claim upon which relief may be granted. As the defendants explain in their motion to dismiss, the constitutional provisions on which the plaintiffs rely apply to actions by federal or state governments, and not actions by private citizens. See U.S. Const. Amend. I ("Congress shall make no law . . . abridging the freedom of speech") (emphasis added); Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461 (1952) ("[The First and Fifth] Amendments

concededly apply to restrict only the Federal Government and not private persons."); U.S. Const. Amend. XIV ("No *State* shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any *State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.") (emphasis added); United States v. Morrison, 529 U.S. 598, 621 (2000) (noting "the time-honored principle that the Fourteenth Amendment, by its very terms, prohibits only state action"). Because PMI, Hare, and Owens are clearly private citizens and/or entities, and the plaintiffs have not alleged that they engaged in conduct constituting state action, the plaintiffs' constitutional claims against these defendants are subject to dismissal, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief may be granted.[3]

### B. Title VII Claims

As previously stated, the plaintiffs do not cite Title VII in their complaint. Nonetheless, it is clear from the plaintiffs' allegations and their subsequent briefs and exhibits that certain claims should be construed as being brought pursuant to Title VII. It is also clear from the plaintiffs' submissions that the Title VII claims are asserted only on behalf of plaintiff Roden. For instance, the plaintiffs' first claim alleges that Roden was sexually harassed by Barnett. In claim two, the

---

[3] The court notes that in response to the defendants' motion to dismiss, the plaintiffs argue that no state action is required under 42 U.S.C. § 1985(3). See Pls.' Supporting Br. at 11 (citing Griffin v. Breckenridge, 403 U.S. 88 (1971)). Although the plaintiffs do not cite § 1985(3) in their complaint, the plaintiffs' 21st claim includes language from the statute. Nonetheless, this claim is asserted only against Barnett and Prillaman, not PMI, Hare, or Owens:

> Conspiracy by Defendants Barnett and Prillaman to deprive Plaintiff Roden of the equal protection of the laws and/or equal privileges or immunities under the laws, by depriving her of her right to work at Stop In #205 without discrimination.

(Compl. at 15.)

6

plaintiffs allege that Barnett "created a hostile work environment and kept it going against and as to Plaintiff Roden." (Compl. at 11.) In claim nine, the plaintiffs allege that the hostile work environment was caused by Prillaman, and that she "allow[ed] the environment to continue and worsen against Plaintiff Roden." (Compl. at 13.) In claim 19, the plaintiffs assert a claim for "constructive discharge and hostile work environment." (Compl. at 15.) In claims 25 and 26, the plaintiffs simply state "disparate impact" and "disparate treatment." (Compl. at 16.) Finally, in claim 32, the plaintiffs' assert a claim for "post-employment" retaliation. (Compl. at 19). Specifically, the plaintiffs allege that when Roden pursued a grievance with the company following her resignation, Hare, Owens, and other defendants "retaliated against Plaintiff Roden by obstructing and hindering the grievance and covering the matter up." (Compl. at 19.)

PMI, Hare, and Owens challenge the Title VII claims on the ground that Roden failed to file a timely charge of discrimination with the EEOC. In response to the defendants' motion to dismiss, the plaintiffs have filed numerous documents extrinsic to the pleadings, including a February 26, 2007 document purporting to be Roden's initial filing with the EEOC; an EEOC charge of discrimination dated April 12, 2007; an EEOC dismissal and notice of rights form dated May 14, 2007,[4] on which the EEOC stated that it was "closing its file" and dismissing the

---

[4] The defendants point out that Roden had not yet received this form when the plaintiffs' filed the instant action, and argue that this provides an alternative basis for dismissing the Title VII claims. However, because the receipt of a right-to-sue letter is not a jurisdictional prerequisite to suit in federal court, see, e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), and there is no indication that the brief absence of the letter caused the defendants any prejudice, the court declines to dismiss Roden's Title VII claims on this basis. See Portis v. Ohio, 141 F.3d 632, 634 (6th Cir. 1998) (declining to dismiss a plaintiff's Title VII claims on the basis that the plaintiff did not receive a right-to-sue letter from the EEOC until a week after she filed suit in federal court, since the "brief absence [of the non-jurisdictional requirement] caused Ohio no prejudice"); Perkins v. Silverstein, 939 F.2d 463, 471 (7th Cir. 1991) ("While [Perkins' Title VII claims] may have been subject to dismissal at any time prior to Perkins' receipt of a right-to-sue letter, the receipt of that letter after the complaint had been filed, but

charge since it was "not timely filed with EEOC"; and post-employment letters written to and from Roden, Hare, and Owens. Both the plaintiffs and the defendants rely on the aforementioned exhibits to support their arguments regarding the timeliness of Roden's charge of discrimination. Because the court will consider these extrinsic documents, the court will assess the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure as a motion for summary judgment. See Ford v. Advanced Mktg. Servs., 2000 U.S. App. LEXIS 372, at *3 (4th Cir. Jan. 20, 2000) (noting that a motion to dismiss should be treated as one for summary judgment if the court considers materials outside the pleadings, and that the district court "effectively convert[ed] the motion to dismiss to a motion for summary judgment" by comparing two EEOC charges of discrimination); Rohan v. Networks Presentation LLC, 175 F. Supp. 2d 806, 809 (D. Md. 2001) (converting a motion to dismiss to a motion for summary judgment in an employment discrimination case, since the court was considering such extrinsic documents as the plaintiff's EEOC charge of discrimination and a supplemental statement provided to EEOC investigators). However, because the extrinsic documents relate solely to the issue of the timeliness of the Title VII claims, the court will treat the defendants' Rule 12(b)(6) motion as a motion for summary judgment only as to this issue. See Rohan, 175 F. Supp. 2d at 809.[5]

---

before it had been dismissed, effectively cured the deficiency in the original complaint."); Pinkard v. Pullman-Standard, 678 F.2d 1211, 1218 (5th Cir. 1982) ("[T]he subsequent receipt of the right-to-sue letter cures the defect with respect to the original filing of this action."). The court notes that in addition to filing a copy of the dismissal and notice of rights form with their response to the defendants' motion, the plaintiffs filed a copy of the form on May 18, 2007, four days after the form was issued.

[5] The court notes that when a party has notice that a motion to dismiss will be treated as a motion for summary judgment based on the consideration of exhibits outside the pleadings, the court is not required to formally notify the party that the motion to dismiss will be treated as a motion for summary

8

To support their motion, PMI, Hare, and Owens argue that Roden failed to file a charge of discrimination with the EEOC within 300 days of the alleged misconduct, and that she is therefore barred from bringing the instant Title VII claims. See 42 U.S.C. § 2000e-5(e)(1); Venkatraman v. REI Sys., Inc., 417 F.3d 418, 419 (4th Cir. 2005). The defendants contend that the complaint "assert[s] that Roden was subjected to discrimination *during* her employment, and that her employment ended in May 2005." (Defs.' Reply Mem. at 3) (emphasis in original). The defendants further contend that Roden "has provided a document dated February 26, 2007 which purports to be a communication to the EEOC which *precedes* the filing of a formal Charge," and that "*[a]ll* of the alleged discrimination identified in this pre-Charge submission was described as taking place *prior* to May 2005." (Defs.' Reply Mem. at 3) (emphasis in original).

The court agrees with the defendants that Roden's pre-resignation and resignation-related claims under Title VII are barred by the applicable statute of limitations. As noted above, the exhibits submitted by the plaintiffs indicate that Roden did not submit the initial filing with the EEOC until February 26, 2007. Roden resigned from her position in May of 2005, more than 300 days prior to the date of the initial EEOC filing. Therefore, Roden's claims of sexual

---

judgment. Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998). Moreover, the United States Court of Appeals for the Fourth Circuit has held that "when a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985). Here, the plaintiffs submitted exhibits outside the pleadings in response to the defendants' motion to dismiss, and both the plaintiffs and the defendants rely heavily on these documents. As previously stated, the Roseboro notice issued on July 17, 2007 advised the parties that if documents outside the pleadings were submitted by either side, any motion to dismiss under Rule 12(b)(6) may be considered as a motion for summary judgment. Additionally, the pro se plaintiffs express their understanding of a possible conversion in their "Response to Defendants' Opposition," in which they suggest that the defendants' motion to dismiss should be converted to a motion for summary judgment. (Pls.' Resp. to Defs.' Opp. at 4.) Thus, the court concludes that both sides were clearly on notice of the possibility that the court would consider the plaintiffs' exhibits and treat the defendants' motion to dismiss as one for summary judgment.

9

harassment, hostile work environment, constructive discharge, and pre-resignation disparate treatment are time-barred.

In addition to the aforementioned Title VII claims, however, the plaintiffs' complaint asserts a claim for post-employment retaliation, which was also raised in the initial filing with the EEOC and the EEOC charge of discrimination dated April 12, 2007.[6] In both EEOC filings, Roden asserted that she "went back and forth with Hare and Owens for approximately one (1) year," and that Hare and Owens "deliberately lured [her] into this lengthy delay by making a pretense of investigating and resolving the matter, but having no intention to do so." (Attach. to Pls.' Supporting Br. and Attach. to Pls.' Resp. to Defs.' Opp'n.) Additionally, as alleged in the instant complaint, Roden asserted in both filings that she was subject to "post employment[] retaliation for filing a grievance." (Attach. to Pls.' Supporting Br. and Attach. to Pls.' Resp. to Defs.' Opp'n.) Because PMI, Hare, and Owens do not address the timeliness of Roden's post-employment retaliation claim in the instant motion, and the court is unable to conclude, on the basis of the current record, that it is also time-barred, the defendants' motion will be denied as to this claim.

In response to the defendants' motion, the plaintiffs argue that Hare and Owens' post-employment actions "kept the 300-day EEOC clock ticking" with respect to Roden's other Title VII claims. (Pls.' Supporting Br. at 4.) However, the court disagrees. Roden's post-employment retaliation claim is based on conduct that is separate and distinct from the conduct on which her pre-resignation and resignation-related claims are based. See National R.R. Passenger Corp. v.

---

[6] The court notes that in Robinson v. Shell Oil Co., 519 U.S. 337, 345-346 (1997), the United States Supreme Court held that post-employment retaliation against a former employee is actionable under Title VII.

10

Morgan, 536 U.S. 101, 113 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). Although evidence of behavior occurring outside of the applicable limitations period can be used to support a plaintiff's hostile work environment claim, there must be at least one act contributing to that hostile work environment that takes place within the statutory time period. Morgan, 536 U.S. at 116-118.[7] In this case, all of the events giving rise to Roden's hostile work environment claim occurred on or before her resignation in May of 2005, more than 300 days before she initiated contact with the EEOC in February of 2007. Thus, all of Roden's pre-resignation and resignation-related claims under Title VII are time-barred, since they are based on conduct that occurred outside of the applicable limitations period.

The plaintiffs also assert that Roden is entitled to equitable relief in the event that the court deems any of her Title VII claims untimely. The court concludes, however, that neither equitable tolling nor equitable estoppel is applicable in this case. The United States Court of Appeals for the Fourth Circuit has emphasized that these equitable exceptions to the statutory limitations period "should be sparingly applied." English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987). The doctrine of equitable tolling "applies only when an employer's reliance on the applicable statute of limitations would be inequitable, because the employer 'wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'" Olson v. Mobil Oil Corp., 904 F.2d 198, 201 (4th Cir. 1990) (quoting English, 828 F.2d at 1049). "To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to

---

[7] In Morgan, the Supreme Court distinguished hostile work environment claims from other claims under Title VII, explaining that "[t]heir very nature involves repeated conduct," and that "[s]uch claims are based on the cumulative affect of individual acts." Morgan, 536 U.S. at 115.

11

mislead [her] and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." English, 828 F.2d at 1049. Similarly, the doctrine of equitable estoppel applies only when the employer takes intentional steps to cause the plaintiff to miss a filing deadline. Id.; see also Price v. Litton Bus. Sys., Inc., 694 F.2d 963, 965 (4th Cir. 1982) ("The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in a timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing [her] charge.").

In this case, none of the plaintiffs' arguments or evidence is sufficient to invoke the doctrine of equitable tolling or equitable estoppel. To support their argument that these doctrines should be applied, the plaintiffs contend that Roden "went back and forth with Defendants Hare and Owens seeking reinstatement," and that "had the Defendants reinstated her, there would have been no EEOC action nor case before this court." (Pl.'s Supporting Brief at 5.) However, as the defendants explain in their reply brief, "[a]n amployee's hope for rehire, transfer, promotion, or a continuing employment relationship . . . cannot toll the statute absent some employer conduct likely to mislead an employee into sleeping on [her] rights." Price, 694 F.2d at 965-966. Here, the plaintiffs' own exhibits establish that the defendants did not attempt to mislead Roden or intentionally cause her to delay filing her charge of discrimination. The exhibits include an October 5, 2005 letter from Owens and a November 16, 2005 letter from Hare, each of whom was writing on behalf of PMI. In her letter, Owens advised Roden that PMI had reopened the investigation into concerns outlined in a letter previously written by Roden, that the company had conducted extensive interviews at Roden's request, and that Roden's concerns had been

12

appropriately and adequately investigated. Hare's November 16, 2005 letter was written in response to another letter from Roden, in which Roden stated as follows: "Prior to presenting my concerns to the appropriate legal forum, I make my final request to you to resolve this matter by compensating me for my losses and reinstating my employment." (Attach. to Pls.' Supporting Br.) In response, Hare advised Roden that her claims had been thoroughly investigated, and that the company would consider the matter "closed," if there were no additional facts for the company to review. (Attach. to Pls.' Supporting Br.) These letters refute the suggestion that Roden's employer engaged in behavior that would warrant the application of equitable tolling or equitable estoppel. There is no evidence that PMI, Hare, or Owens actively concealed the existence of a cause of action or took any active steps to prevent Roden from pursuing a civil action. The company's willingness to investigate Roden's claims, as expressed in the aforementioned letters "does not by itself qualify as deliberate deception," and "simply failing to update [the plaintiff] on the progress of the investigation does not qualify as affirmative misconduct." Belton v. City of Charlotte, 175 Fed. Appx. 641, 654 (4th Cir. 2006). Likewise, Roden's hope that the internal grievance process would resolve her issues is not the type of situation that equitable tolling or equitable estoppel is designed to address. Id.; see also Delaware State College v. Ricks, 449 U.S. 250, 261 (1980) ("[P]endency of a grievance or some other method of collateral review of an employment decision[] does not toll the running of the limitations period."); Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th Cir. 1992) ("[P]roviding many and varied opportunities for internal review is not the sort of deception that supports equitable estoppel."). Accordingly, Roden's pre-resignation and resignation-related

13

claims under Title VII are time-barred, and the court will grant the defendants' motion as to these claims.

### C. Claims Under State Law Against PMI, Hare, and Owens

In moving to dismiss the plaintiffs' claims under state law, PMI, Hare, and Owens simply argue that the court should decline to exercise supplemental jurisdiction over the state law claims, if the court dismisses all of the plaintiffs' federal claims. Because Roden's post-employment retaliation claim under Title VII has not been dismissed, the court maintains supplemental jurisdiction over the plaintiffs' state law claims against PMI, Hare, and Owens. See 28 U.S.C. § 1367. Accordingly, the defendants' motion to dismiss will be denied as to these claims.

### III. Plaintiffs' Motion for Partial Summary Judgment

The plaintiffs have moved for partial summary judgment as to the following claims: "4, 22, 27, 28, 36, 5, 12, 17, 18, 20, 21, 33, [and] 35." (Pl.'s Mot. Partial S.J. at 1.) Eight of these claims, 4, 5, 12, 17, 18, 20, 21, and 22, are asserted only against Bill Barnett and Penny Prillaman. Having previously dismissed all of the claims against Barnett and Prillaman, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the plaintiffs' motion for partial summary judgment will be denied as moot as to these eight claims. Likewise, the plaintiffs' motion for partial summary judgment will be denied as moot as to claims 27, 28, 33, 35, and 36 to the extent that these claims allege constitutional violations on the part of PMI, Hare, and/or Owens, since the court has concluded that such claims fail to state a claim upon which relief may be granted.

The only remaining claims identified in the plaintiffs' motion for partial summary judgment are the portions of claims 27 and 28 which assert that Hare and Owens violated

14

Virginia Code § 18.2-409. Section 18.2-409 is a criminal statute. The statute provides that "[e]very person acting jointly or in combination with any other person to resist or obstruct the execution of any legal process shall be guilty of a Class 1 misdemeanor." Va. Code § 18.2-409. Because the plaintiffs have not cited, and the court is unable to locate, any authority indicating that citizens have a private right of action under § 18.2-409, the plaintiffs are not entitled to summary judgment as to the portions of claims 27 and 28 alleging a violation of this statute. See Fed. R. Civ. P. 56(c) (a party moving for summary judgment must show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). Accordingly, the plaintiffs' motion for partial summary judgment will be denied.

## Conclusion

For the reasons stated, the plaintiffs' claims against Bill Barnett, Penny Prillaman, and the John and Jane Doe defendants will be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. Additionally, the motion to dismiss filed by PMI, Ronald Hare, and Kimberly Owens will be granted in part and denied in part, and the motion for partial summary judgment filed by the plaintiffs will be denied.

The Clerk is directed to send certified copies of this memorandum opinion to the plaintiffs and counsel of record for the defendants.

ENTER: This 29th day of November, 2007.

/s/ Glen Conrad
United States District Judge

15

Case 7:07-cv-00240-GEC   Document 30   Filed 11/29/07   Page 15 of 15   Pageid#: 268